# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| DANIEL KAPETAN, | ) | |
| | ) | 3:13-cv-00171-MMD-VPC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| JAMES G. COX, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | July 11, 2014 |
| _____ | ) | |

   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion to dismiss (#22).[1]  Plaintiff opposed (#s 27, 28), and defendants replied (#36).  The court has thoroughly reviewed the record and recommends that defendants' motion to dismiss be granted in part and denied in part.

## I.  HISTORY & PROCEDURAL BACKGROUND

   Plaintiff Daniel Kapetan ("plaintiff") filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that various Nevada Department of Corrections ("NDOC") personnel violated his Fifth, Eighth and Fourteenth Amendment rights when he was in NDOC custody (#2).

   Plaintiff alleges the following:  on April 27, 2011, he received a notice of charges at the Northern Nevada Restitution Center.  *Id*. at 5.  While not entirely clear, it appears that plaintiff, pursuant to a Driving under the Influence conviction, was in a program at the center, missed his bus and was charged with non-compliance with travel arrangements.  *Id*.  He pleaded guilty at the initial

---

[1] Refers to the court's docket numbers.

hearing and was ensured that he would not be removed from the program or restitution center for the infraction. *Id*. The next day, defendant Lieutenant Brian Ward ("Ward") conducted the disciplinary hearing; he berated plaintiff and called him a liar. *Id*. Without a classification hearing, Ward personally rolled-up and removed plaintiff from the minimum-custody center and transported him to Warm Springs Correctional Center ("WSCC"), a medium-security facility. *Id*.

Plaintiff was placed in the general population. *Id*. at 6. His cellmates repeatedly threatened him with violence but defendant caseworkers Neubauer and Dutton were not available and failed to answer kites he submitted requesting a bed move. *Id*. at 7. On May 5, 2011, plaintiff sent a kite pleading for a cell move, which Neubauer denied. *Id*. He suffered constant verbal abuse by his cellmates. *Id*. at 7-8. For the next two weeks, he attempted to contact or see Neubauer or Dutton but was denied. *Id*. at 8. On May 31, his cellmate Fahey punched him, cutting his eye and giving him a black eye. *Id*. Other inmates convinced plaintiff to say that he slipped in the shower to avoid getting the wing locked down. *Id*. at 9.

On June 14, Dutton again refused his bed move request. *Id*. at 10. Then she asked him if he had been assaulted, and plaintiff responded: "Let's just say I really need to get out of that cell." *Id*. Dutton called in officers Crowder and Womer questioned him and escorted him to disciplinary segregation. *Id*. at 10-11. A transport officer told Fahey that plaintiff snitched on him. *Id*. at 11. Plaintiff never filed formal charges against Fahey out of fear of retaliation. *Id*.

Officers Buchannan and Keith conduct a classification hearing, plaintiff was placed in a general population lockdown unit for five months; subsequently he was transferred to Southern Desert Correctional Center ("SDCC"). *Id*. at 12. At some point, Lt. Kennedy "finally" conducted the disciplinary hearing on the fight charges. *Id*. at 13. He persuaded plaintiff to plead guilty to

fighting and he dismissed the other charges. *Id.* Plaintiff later tried to "recant" his plea but his appeal was ultimately denied on February 21, 2012. *Id.*

Upon his transfer to SDCC, gang-affiliated inmates threatened plaintiff. *Id.* at 14. CCS Martinez told plaintiff they do not do bed moves so his only option was to go to administrative segregation ("the hole") or sort it out in the unit. *Id.* Plaintiff felt he had no choice so he went to the hole. *Id.* In the hole he was placed in a filthy cell and not allowed a shower for eight days, was denied adequate exercise time, and was forced to sleep on a dingy worn-out mattress that caused sciatic nerve problems from which he continues to suffer. *Id.* at 14. After thirty-nine days, he was released to a level-2 unit. *Id.* at 15.

Defendants have moved to dismiss, arguing that plaintiff's Fifth, Eight, and Fourteenth Amendment equal protection claims should be dismissed for failure to state a claim for which relief may be granted (#22, pp. 2-3). They also argue that plaintiff's Fourteenth Amendment due process claim in count I should be dismissed because plaintiff's allegations do not implicate any liberty interest.

## II.  DISCUSSION & ANALYSIS

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### A.    Legal Standards

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290

(1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law."  *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted).  Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 678.  The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (citation omitted).  "Determining whether a complaint states a plausible claim for relief" is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).  Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged.  *Id*. at 682.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Allegations in *pro se* complaints, "'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers[,]'" and must be liberally construed.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*)); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.  2010) (citation omitted).  A district court should not dismiss a *pro se* complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v.  Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam) (internal quotation marks omitted).

**B. Analysis**

**1.  Count I**

Plaintiff alleges that in April 2011, he pled guilty to a disciplinary charge at the Nevada Restitution Center related to missing his bus (#2, p. 5).  Defendant Ward conducted the disciplinary hearing and berated plaintiff, accusing him of lying, despite the fact that plaintiff pled guilty to the

charge.  Ward then personally transported plaintiff to WSCC without a "due process hearing" and in violation of his Fifth and Fourteenth Amendment due process rights as well as his rights under NRS 484C.410 (#2, p. 17).   He also contends that this "intentional and malicious" assignment to a medium-security facility caused him to lose liberties enjoyed by minimum-security inmates, placed him with violent offenders who physically and verbally assaulted him, and delayed his sentence expiration date for six months.  *Id*. He further alleges, without elaboration, that defendants Warden Brian Williams, CCS III Hill and CCS Stark told him that he was medically unfit to fight fires as part of the Nevada Division of Forestry ("NDF") crews, and therefore, he could not be assigned to a NDF camp.  *Id*. at 18.  Plaintiff claims that this was "blatantly discriminatory" and in violation of his rights under the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101-12213, and/or the Rehabilitation Act, 29 U.S.C. §§ 701-97b, and the Equal Protection Clause of the Fourteenth Amendment.  *Id*.

With respect to due process, the Due Process Clause of the Fifth Amendment applies to and restricts only the federal government.  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).  Plaintiff's factual allegations do not involve any federal actors.  Therefore, plaintiff fails to state a due process claim under the Fifth Amendment.

Under the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty or property without due process of law . . . .[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed . . . ."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary

action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling

witnesses would interfere with institutional security; and (3) legal assistance where the charges are

complex or the inmate is illiterate.  *See id.* at 563-70; *see also Superintendent, Mass. Corr. Inst.,*

*Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir.

2003); *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997); *Walker v. Sumner*, 14 F.3d 1415,

1419-20 (9th Cir. 1994), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472

(1995); *McFarland v. Cassady*, 779 F.2d 1426, 1428 (9th Cir. 1986), *abrogated in part on other*

*grounds by Sandin*, 515 U.S. 472.  "[T]he requirements of due process are satisfied if some evidence

supports the decision by the prison disciplinary board . . . ."  *Hill*, 472 U.S. at 455; *see also Bruce v.*

*Ylst*, 351 F.3d 1283, 1287-1288 (9th Cir. 2003); *Toussaint v. McCarthy*, 926 F.2d 800, 802-803 (9th

Cir. 1991); *Bostic v. Carlson*, 884 F.2d 1267-1269-70 (9th Cir. 1989); *Jancsek v. Or. Bd. of Parole*,

833 F.2d 1389, 1390 (9th Cir. 1987); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987); *see*

*especially Burnsworth v. Gunderson*, 179 F.3d 771, 774-75 (9th Cir. 1999) (where there is no

evidence of guilt, it may be unnecessary to demonstrate existence of a liberty interest).  *But see*

*Hines v. Gomez*, 108 F.3d 265, 268-269 (9th Cir. 1997) (holding that this standard does not apply to

original rules violation report where prisoner alleges the report is false).

A prisoner does not have a "constitutionally guaranteed immunity from being falsely or

wrongly accused of conduct which may result in the deprivation of a protected liberty interest."

*Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989).  Rather, the Fourteenth Amendment provides

that a prisoner "has a right not to be deprived of a protected liberty interest without due process of

law."  *Id*.  As long as a prisoner receives proper procedural due process, as outlined in *Wolff*, a claim

based on the falsity of disciplinary charges, standing alone, does not state a constitutional claim.  *Id.;*

*Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41

(7th Cir. 1984).   However, an inmate can allege he was not afforded the procedural protections required by the Due Process Clause in connection with the issuance and hearing of the false disciplinary report.  *See, e.g., Black v. Lane*, 22 F.3d 1395, 1401-02 (7th Cir.1994).

In *Sandin v. Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. *Id*.   Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. *Id*.   In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.   Although a prisoner whose liberties are at stake must be given the opportunity to present evidence and call witnesses at a disciplinary hearing, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), no due process claim lies where an alleged *Wolff* violation deprives the prisoner of no cognizable liberty interest, *Sandin*, 515 U.S. at 483–84.

Here, plaintiff appears to state that he pled guilty at both the initial hearing and his disciplinary hearing, and indeed, he states that he was in fact guilty.  Even if Ward verbally abused plaintiff, such conduct—while unprofessional and unbecoming—does not implicate plaintiff's constitutional rights. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("verbal harassment or abuse . . . [alone] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"). However, it is unclear whether Ward conducted a full disciplinary hearing, or merely berated plaintiff.  The court must, at this early stage in the litigation, accept as true the allegation that Ward immediately rolled plaintiff up and personally transported him to WSCC.  Such allegation tends to suggest that the full disciplinary hearing process was not completed.   Accordingly, defendants' motion to dismiss the Fourteenth Amendment due process claims in count I should be granted;

however, the plaintiff should be given leave to amend this claim if he is able to set forth specific factual allegations that specific defendant or defendants acted or failed to act in violation of his due process rights as described in this order. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Next, with respect to the ADA claims, the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The Rehabilitation Act similarly forbids discrimination:

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Parcel Service.

29 U.S.C. § 794.

The Supreme Court has held that state inmates may bring an ADA action against state prisons. *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-10 (1998). Inmates must allege that they have been denied the benefits of the services, programs, or activities of the prison, or have been subjected to any discrimination, by reason of their alleged disability. *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir1997), cert denied, 524 U.S. 937 (1998).

The Equal Protection Clause of the Fourteenth Amendment requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 440

(1985). The heightened standard of strict scrutiny requires the state to show that the classification is narrowly tailored to serve a compelling interest. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

Where an inmate is not a member of a protected class, an equal protection claim is subject to the rational basis test. *See McGinnis v. Royster*, 410 U.S. 263, 270 (1973) (applying rational basis test where state law denied certain state prisoners good-time credit toward parole eligibility for the period of their presentence county jail incarceration, whereas those released on bail prior to sentence received good-time credit for the entire period of their prison confinement). Under a rational basis inquiry, in order to prevail on an equal protection claim, plaintiff must demonstrate that (1) he is similarly situated to others, (2) he is being treated worse than others with whom he is similarly situated, and (3) there is no rational basis for the disparate treatment. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993). Stated simply, prison officials need show only a rational basis for dissimilar treatment of other similarly-situated persons in order to defeat the merits of plaintiff's claim. *Id.*

In analyzing the equal protection and ADA claims, the court first notes that prisoners have no liberty interest in their classification status or in their eligibility for rehabilitative programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998); *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). Moreover, prisoners have no liberty interest in being transferred or avoiding transfer to another prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225-27 (1976); *United States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995) (*per curiam*); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989). Here, plaintiff states that prison personnel found him "medically unfit" for firefighting duty; he does not set forth factual allegations that he was discriminated against on the basis of a disability. He does not allege that he

is a member of a protected class.  Plaintiff's own allegations indicate that prison administrators had a rational basis to determine that he was not eligible for a forestry camp—that he was medically unfit for fire duty (which plaintiff does not dispute).  Defendants' motion to dismiss should be granted insofar as plaintiff's ADA and Fourteenth Amendment equal protection claims in count I should be dismissed for failure to state claims for which relief may be granted.  As it is clear that amendment would be futile, the count I Fifth Amendment due process, Fourteenth Amendment equal protection, and ADA claims should be dismissed with prejudice and without leave to amend.  *Schucker*, 846 F.2d at 1203-04.

Considering the *pro se* complaint as a whole, plaintiff also alleges in count I that defendants James Cox, Sheryl Foster, Rex Reed, Jack Palmer, Lisa Walsh, Brian Williams, Greg Smith, Cheryl Burson, along with caseworkers Shannon Moyle, Tanya Hill, Jessie Neubauer, Jennifer Dutton, and Stacy Stark were deliberately indifferent to a serious risk to his safety in violation of his Eighth Amendment rights (#2, pp. 18-19).

Plaintiff alleges that beginning on May 1, 2011, he submitted numerous inmate request forms to Neubauer and Dutton "urgently requesting to meet and speak to [them] regarding some very serious matters regarding his cell/bed move" because his three cellmates, who were violent, gang-affiliated offenders, had threatened him and demanded that he immediately move to another cell.  *Id.* at 7.  He met with Neubauer on May 12, and "desperately and urgently pleaded for a cell move."  *Id.* She denied the request even though plaintiff explained the urgent need for the move and that it was not a convenience request.  *Id.*  He was constantly verbally abused and threatened by his cellmates and continued to submit kites seeking a bed move.  *Id.*  Dutton refused his May 15 request and referred him back to Neubauer.  *Id.*  Due to lockdowns, plaintiff was unable to see Neubauer at "open door call" for two weeks.  He happened to see Neubauer on his unit on May 30 and pleaded

with her: "this is not a request for a convenience move, I really have to get out of that cell. It just isn't working out there." *Id.* at 8. Dutton then became his official caseworker. Plaintiff and two of his cellmates submitted a request that the fourth cellmate, Fahey—who by that time was threatening all the other cellmates—be switched with an inmate in unit 4, who also signed the kite. *Id.* at 8-9. Dutton denied the move request, and on June 1, 2011, Fahey "finally snap[ped]" and punched plaintiff in his left eye, cutting it and causing a severe black eye. *Id.* at 9. Plaintiff continued to request a bed move. *Id.* at 10. On June 14, he admitted, under questioning by Dutton, that Fahey had punched him. *Id.* He was then issued a notice of charges for fighting and placed in disciplinary segregation.[2] *Id.* Defendants James Cox, Sheryl Foster, Rex Reed, Jack Palmer, Lisa Walsh, Brian Williams, Greg Smith, Cheryl Burson, Shannon Moyle, Tanya Hill, and Stacy Stark denied his grievances related to the refusal to grant him a bed move. *Id.* at 18.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Under the Eighth Amendment, "[p]rison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn

---

[2] Under the "Nature of the Case" section of the complaint, plaintiff discusses that he ultimately pled guilty to the disciplinary charges in order to "get this all over with and not go back to the hole" (#2, p. 13).

that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 2002; *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (per curiam); *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).  To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge.  *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). For example, allegations that prison officials called a prisoner a "snitch" in the presence of other inmates can state a claim for deliberate indifference to an inmate's safety.  *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989).

Plaintiff's allegations that he repeatedly kited Neubauer and Dutton seeking an urgently needed bed move and that Cox, Foster, Reed, Palmer, Walsh, Williams, Smith, Burson, Moyle, Hill, and Stark denied his grievances about the bed move state a colorable claim against these defendants.

Accordingly, plaintiff's Eighth Amendment deliberate indifference claim in count I should proceed, his Fourteenth Amendment due process claim against Ward should be dismissed with leave to amend, and his Fourteenth Amendment equal protection claim and ADA claim should be dismissed with prejudice and without leave to amend.

**2. Count II**

Plaintiff alleges that the custody level system (set forth in Administrative Regulation 516) that NDOC uses in connection with the classification of inmates is unauthorized and discriminatory and constitutes cruel and unusual punishment in violation of his Eighth Amendment rights (#2, p. 19).  He alleges only that levels one and two are more restrictive than normal medium custody.  He also complains that he was placed in an overcrowded cell with violent offenders, a control flush toilet and an inadequate number of showers.  *Id.*

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). However, "The Constitution 'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349).

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal measure of life's necessities'[.] . . .
> The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'

*Farmer*, 511 U.S. at 834.

Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986). Allegations of overcrowding, alone, are insufficient to state a claim under the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989); *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam). Where crowding causes an increase in violence or reduces the provision of other constitutionally required services, or reaches a level where the institution is no longer fit for human habitation, however, the prisoner may be able to state a claim. *See Balla*, 869 F.2d at 471; *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984).

"[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731-32 (9th Cir. 2000); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985).

Defendants are correct that plaintiff's claims that the twelve foot by fifteen foot cell was not designed for four inmates, that its control flush toilet "contributed to very unsanitary conditions," and that two of the four showers on the wing were broken simply do not describe a severe lack of sanitation or a situation unfit for human habitation so as to implicate the Eighth Amendment (#22, pp. 11-12). The Constitution does not mandate comfortable prisons. *Farmer v. Brennan*, 511 U.S. 825, 831 (1994), quoting *Rhodes v. Chapman*, 452 U.S. 337 (1981). With respect to the level system, a plaintiff may state a claim if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). However, here, plaintiff provides absolutely no specific factual allegations to support his conclusory claim that the level system, which varies in the privileges and "perks" inmates at each level can access, itself violates the Eighth Amendment.

Finally, in count II plaintiff states that his Fourteenth Amendment equal protection rights were violated but sets forth absolutely no allegations implicating equal protection. Accordingly, defendants' motion to dismiss should be granted as to count II. Count II should be dismissed for failure to state any claims for which relief may be granted.

### 3. Count III

Plaintiff alleges that at NNCC he was denied "adequate" access to the gym or yard (#2, p. 21). He was constantly denied access even to the yard due to frequent lockdowns—he estimates that

sixty-five percent of the time yard time was canceled.  *Id*.  Defendants James Cox, Sheryl Foster, Jack Palmer, Lisa Walsh and Shannon Moyle denied his grievances about lack of exercise time.  *Id*. At SDCC he was also constantly denied yard and gym time due to lockdowns and arbitrary staff refusals.  *Id*. at 21-22.  While he was in SDCC unit 8, yard time, which was only scheduled once a week, was frequently cancelled.  *Id*. at 22.  In unit 6, plaintiff was denied yard or gym time from January 7, 2012 to July 20, 2012.  *Id*.  Defendants Brian Williams, Cheryl Burson, Tanya Hill and Stacy Stark denied his grievances about lack of exercise time at SDCC.  *Id*.

"Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."  *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318 (9th Cir. 1998); *see also Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010); *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  The denial of all outdoor exercise may constitute cruel and unusual punishment absent unusual circumstances.  *Spain*, 600 F.2d at 199-200.  "[A] temporary denial of outdoor exercise with no medical effects [, however,] is not a substantial deprivation."  *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997); *see also Noble v. Adams*, 636 F.3d 525, 531 (9th Cir. 2011) (concluding prison officials were entitled to qualified immunity from § 1983 claim that post-riot lockdown of prison resulted in denial of Eighth amendment right to exercise); *Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2010) (recognizing that temporary denial of outdoor exercise with no medical effects is not a substantial deprivation); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998).

Prison officials may restrict outdoor exercise on the basis of weather, unusual circumstances, or disciplinary needs.  *See Spain*, 600 F.2d at 199.  "The cost or inconvenience of providing

-16-

adequate [exercise] facilities[, however,] is not a defense to the imposition of a cruel punishment." *Id*. at 200.

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement- and the liability- of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). The supervisor defendant under those circumstances "is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Id*. at 1207.

Plaintiff states colorable Eighth Amendment claims against the defendants listed in count III. Accordingly, defendants' motion to dismiss should be denied as to the Eighth Amendment claims in count III. Plaintiff also mentions equal protection; however, he sets forth no allegations whatsoever in count III that implicate his Fourteenth Amendment equal protection rights. Thus, any Fourteenth Amendment claims in count III should be dismissed.

As discussed above, plaintiff should be granted leave to amend his Fourteenth Amendment due process claims in count I if he is able to do so in conformance with this order. If plaintiff elects to file an amended complaint, he is advised that he should specifically identify each defendant to the best of his ability, clarify what constitutional right he believes each defendant has violated and support each claim with factual allegations about each defendant's actions. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff's claims

must be set forth in short and plain terms, simply, concisely and directly. *See Swierkeiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); Fed. R. Civ. P. 8.

Plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-1 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. If plaintiff chooses not to file an amended complaint, this action shall proceed as otherwise set forth in this order as to the Eighth Amendment claims in count I and III.

**C. Defendants' Motions to Strike Fugitive Documents**

After defendants filed their motion to dismiss, and more than a year after he filed his complaint, plaintiff filed a two-hundred-thirty-one-page document that he styled exhibit list (#30). Defendants filed a motion to strike this document (#34). While Federal Rule of Civil Procedure 12(f) gives the district court authority to strike improper pleadings, a district court also has the inherent power to strike a party's submissions other than pleadings. *See Metzger v. Hussman*, 682 F.Supp. 1109, 1110 (D.Nev.1988). The alternative basis for striking improper filings is the district court's "inherent power over the administration of its business. It has inherent authority to regulate the conduct of attorneys [and parties] who appear before it [and] to promulgate and enforce rules for the management of litigation. . . ." *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (citations omitted). For example, district courts follow a long standing practice of striking attachments to motions, such as affidavits, that do not comply with the Federal Rules of Civil Procedure or

Evidence.  *Pfingston v. Ronan Eng'g Co*., 284 F .3d 999, 1003 (9th Cir. 2002) (recognizing practice of striking affidavits).  Plaintiff's exhibit list is not properly before the court.  Good cause appearing, defendants' motion to strike exhibit list (#34) should be granted.

Defendants also move to strike plaintiff's sur-reply in opposition to the motion to dismiss (#41).  Plaintiff opposed the motion to dismiss (#s 27, 28).  Defendants replied (#36).  Plaintiff then filed what he styled opposition to reply (#39).  The Local Rules of Civil Procedure generally limit parties to a motion, opposition and reply in support of the motion.  L.R. 7-2.  Plaintiff has not sought leave of the court to file a second opposition.  Good cause appearing, defendants' motion to strike sur-reply (#41) should be granted.

### III.  CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that defendants' motion to dismiss (#22) should be granted in part and denied in part, as set forth in this order.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

1

### IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#22) be **GRANTED in part** and **DENIED in part** as follows:

Count II should be **DISMISSED** with prejudice and without leave to amend;

Count III should **PROCEED**;

The Eighth Amendment claim against defendants Neubauer, Dutton, Cox, Foster, Reed, Palmer, Walsh, Williams, Smith, Burson, Moyle, Hill, and Stark set forth in count I should **PROCEED**;

The Fourteenth Amendment equal protection claim and the ADA claim set forth in count I should be **DISMISSED** with prejudice and without leave to amend;

The Fourteenth Amendment due process claim against defendant Ward set forth in count I should be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**;

**IT IS FURTHER RECOMMENDED** as follows:

Plaintiff should have **thirty (30) days** from the date that this order is entered to file his amended complaint, if he believes he can correct the noted deficiencies.  The amended complaint must be a complete document in and of itself, and will supersede the original complaint in its entirety.  Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court.

Plaintiff should clearly title the amended complaint as such by placing the words "FIRST AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and plaintiff shall place the case number, **3:13-CV-00171-MMD-VPC**, above the words "FIRST AMENDED" in the space for "Case No."  Plaintiff may find the Civil Rights Complaint form and instructions on the District of Nevada website http://www.nvd.uscourts.gov/Files/42.1983%20Civil%20Rights%20Complaint.pdf.

**IT IS FURTHER RECOMMENDED** that if plaintiff chooses not to file an amended complaint, this action shall proceed as otherwise set forth in this order as to the Eighth Amendment claims in counts I and III.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     **IT IS FURTHER RECOMMENDED** that defendants' motion to strike plaintiff's exhibit list (#34) be **GRANTED**.  Plaintiff's exhibit list (#30) should be **STRICKEN**;

     **IT IS FURTHER RECOMMENDED** that defendants' motion to strike plaintiff's sur-reply to the motion to dismiss (#41) should be **GRANTED**.   Plaintiff's sur-reply (#39) should be **STRICKEN**.

     **DATED:**  July 11, 2014**.**

_____
     **UNITED STATES MAGISTRATE JUDGE**