UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL KAPETAN,<br><br>       Plaintiff,<br><br>  v.<br><br>JAMES COX, *et al.,*<br>       Defendants. | 3:13-cv-00171-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' partial motion to dismiss (#80). Plaintiff opposed (#92), and defendants replied (#93). For the reasons stated below, the court recommends that the motion be granted.

### I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Daniel Kapetan ("plaintiff") is an formerly inmate in the custody of the Nevada Department of Corrections ("NDOC"). At the time relevant to this action, plaintiff was incarcerated at Northern Nevada Restitution Center in Reno, Nevada ("NNRC") and Warm Springs Correctional Center ("WSCC") in Carson City, Nevada. Under plaintiff's second amended complaint (#76), this litigation presents several civil rights claims under 42 U.S.C. § 1983. In his count I due process claim, plaintiff alleges that defendants failed to provide him a hearing prior to his transfer from NNRC to WSCC, and, in any case, that state law forbade his transfer to WSCC, a medium-security facility, because DUI offenders such as himself may only be housed at minimum-security institutions such as NNRC.

### II.     LEGAL STANDARD

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6). The ruling is a question of law. *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). The court is to grant

dismissal when the complaint fails to "state a claim for relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or fails to articulate a cognizable legal theory, *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). When analyzing a motion under Rule 12(b)(6), courts accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679. Although the complaint need not contain detailed factual allegations, it must offer more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In conducting the dismissal analysis, the complaint is construed in a light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Moreover, the court takes particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

### III.   DISCUSSION

Defendants move for partial dismissal of the second amended complaint on several bases. First, they argue that plaintiff's count I due process claim fails as a matter of law because he has not identified a cognizable liberty interest in avoiding transfer to WSCC. (#80 at 4-7). Second, they argue that the due process claim fails to allege personal involvement of defendants Cox, Foster, Reed, Palmer, Moyle, Hill, Nuebauer, and Dutton; therefore, the claim should be dismissed against those defendants if the court does not agree that plaintiff lacked a liberty interest. (*Id*. at 7-9). Third, they argue that plaintiff's amended complaint improperly added a defamation claim against defendant Ward in count I, despite the court's limited grant of leave to amend count I only as to the due process claim. (*Id*. at 9.) Similarly, they argue that plaintiff added Rex Reed as a count III defendant without first obtaining leave. (*Id*. at 10-11.) Finally, they argue that certain forms of relief plaintiff seeks is either moot or barred. (*Id*. at 9-10.) The court addresses each argument in turn.

**A.     Count I Due Process Claim**

**1.     Standard**

The Fourteenth Amendment of the U.S. Constitution guarantees all citizens, including inmates, due process of law. However, only certain interests receive the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Therefore, courts analyze procedural due process claims in two parts. First, the court must determine whether the plaintiff possessed a constitutionally protected interest. Second, and if so, the court must compare the required level of due process with the procedures to which defendants adhered. *Brown v. Ore. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). A claim lies only where the plaintiff has a protected interest, and defendants' procedure was constitutionally inadequate. *Id*.

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Accordingly, the Supreme Court has held that the Due Process Clause provides no liberty interest in intra-prison transfers. *Meachum*, 427 U.S. at 225. Relatedly, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin*, 515 U.S. at 472-73.

State law also may create liberty interests protected under the Due Process Clause, but "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. Under *Sandin*, an inmate may show a protected liberty interest not by reference to the language of statutes or administrative regulations, but instead by demonstrating that the particular action about which he complains rises to the level of "atypical and significant hardship." Indeed, as the Ninth Circuit Court of Appeals recently observed, "*Sandin* and its progeny made this much clear: to find a violation of a state-created liberty interest the hardship

imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013) (quoting *Sandin*, 515 U.S. at 483-84).

When conducting the "atypical and significant hardship" inquiry, courts examine a "combination of conditions or factors . . . ." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). These factors include: (1) the extent of difference between the complained-of confinement and analogous discretionary confinement conditions; (2) "the duration and intensity of the conditions confinement"; and (3) whether the change in confinement extends the length of the prisoner's sentence. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing and discussing *Sandin*, 515 U.S. at 486-87); *Chappell*, 706 F.3d. at 1064-65. These factors "require[] case by case, fact by fact consideration." *Chappell*, 706 F.3d at 1064 (internal citation and quotation marks omitted).

**2.     Analysis**

In his second amended complaint (#76), plaintiff alleges a due process violation because he did not receive a hearing prior to his transfer from NNRC, a minimum-security institution, to WSCC, a medium-security institution. He alleges that, as a DUI offender, state law mandates that he be housed only at a minimum-security facility such as NNRC. Further, he contends that various supervisory defendants were involved in denying his various grievances about the issue, and that defendant Ward personally "rolled him up" at NNRC prior to the transfer. Defendants argue that plaintiff's mere transfer from NNRC to WSCC does not implicate a cognizable liberty interest, and they challenge his reading of state law as one that ignores key conditional language. Plaintiff counters that the facts support the existence of a cognizable liberty interest.

For two reasons, plaintiff's due process claim fails as a matter of law against all defendants. First, plaintiff does not have a cognizable liberty interest under the Due Process Clause in avoiding transfer between prisons. *Meachum*, 427 U.S. at 225 ("the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."). Accordingly, plaintiff must establish a state-created liberty interest under the *Sandin* factors. *See Sandin*, 515 U.S. at 486-87.

Plaintiff's complaint does not state sufficient allegations by which a state-created liberty interest arises. Here, defendants cite to Nevada statutes and holdings of the Nevada Supreme Court for the proposition that an inmate lacks a state-created liberty interest in avoiding intra-prison transfer. (#80 at 5-6.) Similarly, plaintiff cites to Nevada statutes that he reads to guarantee his placement in only a minimum-security institution. Both arguments are wholly unpersuasive because the *Sandin* analysis, rather than state court precedent or statutes, must guide this court's inquiry. Notably, under *Sandin*, the Supreme Court has suggested that avoiding transfer to a *maximum*-security institution may implicate a state-law interest. *See Wilkinson*, 545 U.S. at 223-24. However, the extremely restrictive nature—*i.e.*, the significant difference between "ordinary" prison life and life at a maximum-security facility—weighed heavily in its analysis. *See id.* (describing the "harsh conditions").

In contrast to *Wilkinson*, plaintiff has not sufficient facts regarding life at WSCC that would equate it to the *Wilkinson* prison. Similarly, accepting his allegations as true, he fails to articulate facts that demonstrate his possession of a state-created liberty interest under the *Sandin* factors. He avers that, at WSCC, he was placed "in a very precarious situation with violent, gang affiliated offenders that resulted in physical bodily harm and extreme mental duress . . . ." (#76 at 10.) He also alleges that he lost six-months of good-time credits as a result. (*Id*. at 12.) These allegations do not confirm that, had he remained at NNRC, he would have experienced no exposure whatsoever to violent inmates. His reliance on the Nevada statutes that require placement of DUI offenders at a minimum-security facility or segregation from certain other offenders are of no help, for they do not guarantee his freedom from interaction with dangerous offenders. Indeed, the statute on which plaintiff relies expressly caveats that its mandate for segregation from violent offenders and minimum-security placement must occur only "insofar as [it is] practicable . . . ." Nev. Rev. Stat. 484.3792.

Accordingly, in absence of an absolute protection from these differences, plaintiff has failed to identify a meaningful difference in conditions under the *Sandin* factors. That his incarceration at WSCC happened to pose greater dangers is not an inherent difference from NNRC, for the mere classification of his fellow inmates does not ensure freedom from exposure

to violence. Indeed, "[p]risons are dangerous places . . . ." *Johnson v. California*, 543 U.S. 499, 515 (2005). Moreover, even ignoring the statute's conditional language, that plaintiff has identified some heightened risks in the dangers of an NDOC medium-security institution, vis-à-vis a minimum-security facility, cannot in itself establish a state-created interest. To conclude otherwise would be to say that mere placement at a medium-security institution is not an "ordinary" incident of prison life. That notion is illogical. The vast majority of Nevada inmates are classified for housing at medium-security prisons, which thus renders medium-security housing "ordinary" prison life within the NDOC. *See* Inmate Management, *State of Nevada Department of Corrections*, http://doc.nv.gov/About/Human_Resources/HR_Organization/ (last accessed Aug. 27, 2015) (stating that "Medium" security is "the largest custody category of inmates" and that "these are the general population inmates of most of our institutions."). Similarly, his other allegations fail to establish a state-created liberty interest. He alleges that the change effected an eighteen-month lengthening of his sentence and the loss of good-time credits. The loss of good-time credits is "too attenuated" to support his argument that transfer to WSCC extended his sentence. *Sandin*, 515 U.S. at 487. In sum, plaintiff will be unable to establish that transfer to WSCC constituted an "atypical and significant hardship." His due process claim necessarily fails.

Moreover, to the extent that plaintiff's claim can be construed as one in which he alleges an excessive sentence given the requirements of state law to which he points, the claim is barred by *Heck*. To sue for damages—as does plaintiff—under § 1983 for an improper conviction or sentence, an inmate must first demonstrate the invalidity of his sentence through a *habeas* action. Section 1983 and "the federal habeas corpus statute . . . both provide access to the federal courts 'for claims of unconstitutional treatment at the hands of state officials, . . . [but] they different in their scope and operation.'" *Ramirez v. Galaza*, 334 F.3d 850, 854 (9th Cir. 2003) (quoting *Heck v. Humphrey*, 512 U.S. 477, 48 (1994)). Federal courts must take care to prevent prisoners from relying on § 1983 to subvert the differing procedural requirements of *habeas corpus* proceedings. *Heck*, 512 U.S. at 486-87; *Simpson v. Thomas*, 528 F.3d 685, 695 (9th Cir. 2008). When a prisoner challenges the legality or duration of his custody, raises a constitutional challenge which

1  could entitle him to an earlier release, or seeks damages for purported deficiencies in his state
2  court criminal case or sentencing, his sole federal remedy is a writ of *habeas corpus*. *Edwards v.*
3  *Balisok*, 520 U.S. 641, 648 (1997); *Heck*, 512 U.S. at 481; *Wolf v. McDonnell*, 418 U.S. 539, 554
4  (1974); *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Simpson*, 528 F.3d at 692-93. Stated
5  differently, where "a judgment in favor of the plaintiff would necessarily imply the invalidity of
6  his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can
7  demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

8  Here, because plaintiff is challenging his sentence—perhaps not the express punishment,
9  but certainly the punishment imposed—he must do so through a *habeas* action. "'It is well settled
10 that where a court has jurisdiction of the person and of the offense, the imposition of a sentence in
11 excess of what the law permits does not render the authorized portion of the sentence a nullity,
12 but leaves open to attack on habeas corpus only such portion of the sentence as is excessive.'"
13 *McDonald v. Johnston*, 149 F.2d 768, 769 (9th Cir. 1945). Plaintiff's exact theory is that\s, under
14 his reading of the Nevada statutes, transfer to WSCC exceeded what the law permitted. If so, he
15 must attack the allegedly excessive portion of his sentence through a *habeas* challenge. Should
16 he prevail, he may bring an action to recover damages. For this additional reason, his count I due
17 process claim is not properly before this court. The court recommends dismissal of count I
18 against all defendants without leave to amend.[1]

19 **B.    Defamation Claim**

20 The court finds that the complaint does not state a defamation claim. (*See* #76 at 11.)
21 Count I's caption specifically names the cause of action as the Fourteenth Amendment (*see id*. at
22 8), and plaintiff's opposition clarifies that his reference to defamatory comments does not
23 separately state a defamation claim. Moving forward, the parties are apprised that no defamation
24 claim exists in this action. However, the will recommend to the District Court dismissal of a
25 defamation claim to guarantee the parties need not and cannot address it later in this action.

---

[1] Because the court concludes that the claim fails as a matter of law against all defendants, it does not reach defendants' arguments regarding personal participation of Cox, Foster, Reed, Palmer, Moyle, Hill, Nuebauer, and Dutton.

7

### C. Injunctive Relief and Official Capacity Claims

In his complaint, plaintiff seeks injunctive relief for his claims. (#76 at 24-25.) Because plaintiff is no longer incarcerated, the claims for injunctive relief should be dismissed as moot. Even were such remedies available, plaintiff fails to identify with any particularity what injunctive relief he seeks. (*See id.*)

Plaintiff also sues defendants in their official capacities. (*Id.* at 2-5.) These official-capacity damages claims should be dismissed with prejudice. The Eleventh Amendment bars actions for damages against nonconsenting states, and this bar extends to claims against state actors in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Damages are appropriately sought only in individual-capacity claims under § 1983. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25-29 (1991). The court notes that plaintiff has stated individual-capacity claims in counts II and III, and thus, he may recover money damages should he prevail on those counts.

### D. Defendant Reed

As made evident in the court's August 24, 2015 minute order (#95), Rex Reed is not a defendant to count III. Defendants have not stipulated to his addition, and plaintiff has not yet properly sought leave to amend the complaint to add him as a defendant to count III. Therefore, the court recommends that Reed be dismissed as a defendant to count III.

### IV.  CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' partial motion to dismiss (#80) be granted.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

1    2.     This Report and Recommendation is not an appealable order and any notice of
2 appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's
3 judgment.

### V.     RECOMMENDATION

 **IT IS THEREFORE RECOMMENDED** that defendants' partial motion to dismiss (#80) be **GRANTED**;

   **IT IS FURTHER RECOMMENDED** that count I be dismissed without leave to amend;

   **IT IS FURTHER RECOMMENDED** that, to the extent count I states a defamation claim, it be dismissed without leave to amend;

   **IT IS FURTHER RECOMMENDED** that all official-capacity claims for money damages be dismissed with prejudice;

   **IT IS FURTHER RECOMMENDED** that all claims for injunctive relief be dismissed as moot;

   **IT IS FURTHER RECOMMENDED** that Rex Reed be dismissed as a defendant from count III.

 **DATED**: August 31, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**